THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PCF INSURANCE SERVICES OF THE WEST, LLC,<br><br>                 Plaintiff,<br><br>   v.<br><br>JAMES FRITTS, *et al.*,<br><br>                 Defendants. | CASE NO. C23-1468-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 46). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.  **BACKGROUND**

This is a commercial dispute between Plaintiff PCF Insurance Services of the West, LLC ("PCF"), a Utah-based insurance brokerage firm, and Defendant James Fritts, the former leader of Rice Insurance Agency ("Rice"), now[1] a PCF subdivision. (Dkt. No. 35 at 6–7.) According to

---

[1] Prior its purchase by PCF, Rice was known as RI Insurance Services, LLC ("RI Insurance") and was led by Fritts. (*Id.* at 1–2.) Both are named defendants in this case (hereinafter collectively referred to as "Defendants"). James Fritts is referred to as "Defendant."

ORDER
C23-1468-JCC
PAGE - 1

the operative complaint, the parties executed two contracts in July 2021: the Asset Purchase Agreement ("APA") and the Transition Services Agreement ("TSA"). (*Id.* at 9.) Under the APA's terms, Plaintiff would purchase substantially all of Defendant's insurance business and retain Defendant and others to run Rice as a PCF division. (*Id.* at 2.) And, under the TSA, Defendants agreed to provide Plaintiff certain transition services "in good faith." (*Id.* at 12.)

One important aspect of the APA is its anticipated earn-out. To incentivize Defendant and other employees to continue to grow Rice's business, Plaintiff agreed to pay earn-out bonuses if Rice reached certain earnings growth targets in the first five years following the sale. (*Id.* at 13.) The first year earn-out period presented the most lucrative opportunity. (*Id.*) At the end of that year, if Rice's EBIDTA was greater than 3% over its closing EBIDTA, Plaintiff would pay ten times the amount of that growth. (*Id.*) In later years, Rice would have to reach higher growth targets to achieve this multiple. (*Id.*)

Plaintiff alleges Defendant abused this compensation scheme and, in doing so, defrauded Plaintiff of millions of dollars. (*Id.* at 1.) Accordingly, Plaintiff brings the following causes of action: (1) fraud in the inducement as to the APA and TSA (two counts); (2) fraudulent misrepresentation or concealment; (3) breach of contract as to the APA and TSA (two counts); (4) breach of the implied covenant of good faith and fair dealing; (5) conversion; (6) unjust enrichment; (7) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 19 U.S.C. § 1961 *et seq.*; (8) conspiracy to violate RICO; (9) criminal profiteering; and (10) declaratory judgment. (Dkt. No. 35 at 41–53.) Defendant moves to dismiss each under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 46.)

## II.     DISCUSSION

### A.     Legal Standard

Dismissal is proper when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A plaintiff is obligated to provide grounds for their entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Dismissal under Rule 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In cases involving allegations of fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Said another way, they "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (citations and quotation marks omitted).

### B. Fraudulent Inducement & Fraudulent Misrepresentation or Concealment

Under Washington law, the elements of fraudulent inducement and fraudulent misrepresentation or concealment are the same. To assert either, a plaintiff must show: "(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970 (Wash.

2012).[2]

In moving to dismiss, Defendants dispute the first three elements[3]—that Plaintiff fails to adequately allege a false misrepresentation of material fact. (*See* Dkt. No. 46 at 21–23.) The Court disagrees. Washington law provides that "a promise made with no intention of keeping it is a 'misrepresentation of an existing fact'—the speaker's state of mind—and may be the basis of an action in fraud if the other elements are present." *Beckendorf v. Beckendorf*, 457 P.2d 603, 607 (Wash. 1969). Here, in the APA and TSA, Defendant promised to "cooperate and assist in good faith in the preparation of the Earn-Out EBITDA," to provide transition services "in good faith," and that "[a]ll revenue . . . [would] be booked in the Ordinary Course of Business." (Dkt. No. 35 at 12–14.) Nonetheless, Plaintiff's allegations plausibly suggest that Defendant had no intention of honoring those promises when he made them. In one pre-sale e-mail, for example, Defendant instructed an employee to delay recording commission checks until after closing so that he could get "10x in the earn out." (*Id.* at 15.) And to the extent this is insufficient to raise an inference of bad faith, it is supplemented by allegations that Defendants later misrepresented Rice's earnings and maintained a secret accounting system, payroll system, and bank account. (*See id.* at 16–21); *see also J2 Cloud Services, Inc. v. Fax87*, 2016 WL 6833904, slip op. at 3 (C.D. Cal. 2016) (noting that post-signing facts supplemented the plausibility of plaintiffs' allegations that defendant did not intend to keep promises in the licensing agreement). This is sufficient to raise an inference that Defendant made a promise with no intention of keeping it.

---

[2] Fraudulent concealment may also be established by showing that the defendant breached a duty to disclose a material fact. *Moodie v. Remington Arms Co., LLC.*, 2013 WL 12191352, slip op. at 3 (W.D. Wash. 2013) (citation omitted).

[3] Defendants do not meaningfully dispute the remaining elements of fraud, beyond a footnote stating Plaintiff "has not alleged the other required elements of a fraudulent inducement claim." (*See id.* at 27.) "Relegating substantive arguments to footnotes is dangerous business." *F.D.I.C. v. Red Hot Corner, LLC*, 2014 WL 5410712, slip op. at 1 (D. Nev. 2014). "If an argument is worth making, a party should put the argument in the body of its brief." *Bach v. Forever Living Prod. U.S., Inc.*, 473 F. Supp. 2d 1127, 1132 (W.D. Wash. 2007). To the extent Defendants' conclusory statement can even be deemed an "argument," the Court declines to consider it.

Defendants next argue Plaintiff's fraudulent inducement claims fail because the APA contains a "no-reliance" clause which, under Washington law, precludes Plaintiff from relying on extra-contractual representations to establish fraud. (Dkt. No. 46 at 23) (citing *FMC Techs., Inc. v. Edwards*, 2007 WL 1725098, slip op. at 4–5 (W.D. Wash. 2007)). But here, as previously explained, Plaintiff's fraudulent inducement claims are based on promises *in* the contracts (*i.e.*, the APA and TSA)—not "extra-contractual representations," as Defendants suggest. *See Pac. Contours Corp. v. Fives Machining Sys., Inc.*, 2018 WL 6204579 (C.D. Cal. 2018) (no-reliance clause does not apply to fraud claim where the claim was based on representations in the contract), *report and recommendation adopted*, 2018 WL 6198461 (C.D. Cal. 2018). Thus, because Defendants' argument rests upon a faulty premise, the Court rejects it.

The Court DENIES Defendants' motion to dismiss the fraudulent inducement and fraudulent misrepresentation or concealment claims.[4]

### C.    Breach of Contract

Under Washington law, a breach of contract claim requires three elements: (1) a contract imposing a duty; (2) breach of that duty; and (3) damages proximately caused by the breach. *Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x 814, 817 (9th Cir. 2020). Defendants argue Plaintiff fails to adequately allege any breach of the APA or the TSA. (*See* Dkt. No. 46 at 30–31.) Alternatively, they argue the breach of contract claims are premature because Plaintiff failed to exhaust the APA's dispute resolution procedures regarding earn-out amounts. (*Id.* at 31–32.) On both fronts, the Court disagrees.

First, Plaintiff adequately alleges a breach of the APA. The APA requires Fritts to "cooperate and assist in good faith in the preparation of the Estimated Earn-Out EBITDA

---

[4] Defendants also argue that the independent tort doctrine bars Plaintiff's fraudulent misrepresentation or concealment claim. (*See* Dkt. No. 46 at 27.) But as Plaintiff notes, (*see* Dkt. No. 47 at 27), and Defendants fail to dispute, (*see generally* Dkt. No. 49), the Washington Supreme Court has "repeatedly recognized a fraud claim to be outside the doctrine's scope, allowing such claims to be decided based on established tort precedent." *Elcon*, 273 P.3d at 970. The Court therefore rejects this argument.

. . . including making available, to the extent reasonably necessary, books, records, work papers and personnel at such reasonable times as any Party shall request . . . ." (Dkt. No. 35 at 44–45.) According to the complaint, Fritts caused Rice to overstate its revenues and understate its expenses, maintained separate accounting and payroll systems and a separate bank account, and deliberately obstructed Plaintiff's access to information necessary to verify Rice's financial records. (*See id.* at 15–21, 25, 34–35, 45.) He allegedly did so "to deliberately inflate the bonus earn-out payments contemplated in the sale." (*Id.* at 2.) Assuming these allegations are true, as this Court must, they are sufficient to raise a reasonable inference that Fritts breached the APA. *See Iqbal*, 556 U.S. at 678. Indeed, the APA requires cooperation *in good faith*, and Defendants' alleged conduct here suggests a lack thereof. *See Black's Law Dictionary* (11th ed. 2019) (good faith defined as, among other things, the "absence of intent to defraud").

Second, Plaintiff adequately alleges a breach of the TSA. The TSA, in relevant part, requires Defendants to operate "in good faith" and "in the ordinary course of business." (Dkt. No. 35 at 12–13.) This includes "provid[ing] payroll services . . . *in a consistent manner with [the company's] past practices*." (*Id.* at 13) (emphasis added). Prior to the sale, Defendants did not maintain two separate sets of books or use two separate payroll systems. (*See id.* at 46.) After the sale, however, Defendants changed their past practices and began using separate systems. (*Id.*) Accepting these allegations as true, they are sufficient to state a claim for breach of the TSA that is plausible on its face. *See Iqbal*, 556 U.S. at 677–78. Defendants attempt to downplay their alleged conduct by arguing "there was no need for two systems *pre-close* because there was only one legal entity employing personnel and no earn-out payments to share with those employees." (Dkt. No. 49 at 15.) They contend Plaintiff's reading of the TSA would thus place them "in breach . . . if they changed any pre-close practice, even if such practice was obviously mooted in response to post-close circumstances." (*Id.*) But this argument misses the mark. It is not merely Defendants' *use* of separate systems that amounts to a potential breach of the TSA, but the *covert nature* of those actions. Even the company's controller, James Heerspink, acknowledged that

ORDER
C23-1468-JCC
PAGE - 6

maintaining a "side payroll" was "shady." (Dkt. No. 35 at 18.) This suggests that Defendants knew their change in practice was, at best, problematic.

Third, the APA's dispute resolution procedures do not preclude Plaintiff's breach of contract claims. The relevant provision establishes that "[i]f [Fritts] in good faith disagrees with [Plaintiff's] calculation of the Estimated Earn-Out EBITDA, [Fritts] may, within sixty (60) days after receipt of such statement . . . deliver to [Plaintiff] a notice disagreeing therewith and setting forth his objections." (Dkt. No. 1 at 40–41.) As an initial matter, this provision appears to contemplate procedures for resolving *Fritts's* objections, not Plaintiff's. Moreover, as Plaintiff observes and Defendants fail to dispute, the breach of contract claims at issue are not a dispute over the "Estimated Earn-Out EBITDA." (*See* Dkt. No. 47 at 38.) Rather, they involve alleged breaches of Defendants' contractual duties to act in good faith, as set forth in the APA and TSA.

The Court DENIES Defendants' motion to dismiss the breach of contract claims. And because those claims form the basis for Plaintiff's declaratory judgment claim, the Court further DENIES Defendants' motion to dismiss the declaratory judgment claim.

**D.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (citation omitted). This, however, is not "a free-floating duty of good faith unattached to the underlying legal document," but instead "exists only in relation to performance of a specific contract term." *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991).

Plaintiff claims Fritts breached this implied duty by (1) intentionally misstating the business's earnings to inflate the earn-out payments, and (2) failing to operate it in Plaintiff's interest and consistent with past practice. (Dkt. No. 35 at 47.) Defendants, in response, argue that neither the APA nor the TSA impose any obligations upon them with respect to the business's earnings, and that a conclusion to the contrary would create *new* contractual obligations. (*See*

1  Dkt. No. 46 at 32.) Again, the Court disagrees. As previously noted, the APA *explicitly* requires
2  Fritts to "cooperate and assist in good faith in the preparation of" Rice's earnings. (Dkt. No. 35 at
3  13–14.) Nonetheless, Fritts allegedly misrepresented Rice's earnings and prevented Plaintiff
4  from receiving accurate financial information to correct the earnings. (*Id.* at 47.) Defendants
5  cannot seriously contend that such conduct, if true, would not potentially contravene the APA's
6  good faith requirement—particularly where it allegedly caused Plaintiff to overpay the first earn-
7  out payment by at least $28 million. (*See id.* at 6, 26.)

8  The Court DENIES Defendants' motion to dismiss Plaintiff's claim for breach of the
9  implied covenant of good faith and fair dealing.

10  **E.  Conversion**

11  Defendants next argue Plaintiff's conversion claim should be dismissed under the
12  independent tort doctrine. (Dkt. No. 46 at 33.) On this matter, at least, the Court agrees with
13  Defendants.

14  Under the independent tort doctrine, a plaintiff can recover tort damages only if the injury
15  "traces back to the breach of a tort duty arising independently of the terms of the contract."
16  *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010) ("When no
17  independent tort duty exists, tort does not provide a remedy."). The existence of an independent
18  tort duty "is a question of law and depends on mixed considerations of logic, common sense,
19  justice, policy, and precedent." *Id.* Here, Plaintiffs claim Defendant Fritts had an independent
20  "duty not to deprive PCF of its property through deceptive acts." (Dkt. No. 47 at 41.) This duty,
21  according to Plaintiff, would exist even in the absence of Fritts' affirmative contractual
22  obligation to provide Plaintiff with accurate information. (*See id.*) But Plaintiff provides no
23  meaningful explanation establishing the existence of this supposed "duty." Instead, it concludes
24  that such duty exists and cites to cases that are either nonbinding or inapposite.[5]

---

25  [5] Plaintiff cites to *Burke v. Napieracz*, 674 So. 2d 756, 758 (Fla. Dist. Ct. App. 1996), which was
26  cited in passing in *King v. Rice*, 191 P.3d 946, 952 n.27 (Wash. Ct. App. 2008). (*See* Dkt. No. 47

ORDER
C23-1468-JCC
PAGE - 8

Accordingly, the Court GRANTS Defendants' motion with respect to Plaintiff's conversion claim and DISMISSES it with leave to amend. *See Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010).

### F. Unjust Enrichment

Defendants next argue Plaintiff's unjust enrichment claim should be dismissed because "[a]n unjust enrichment claim cannot proceed where there is a contractual relationship between the parties." (Dkt. No. 46 at 33) (citing *Harris v. U.S. BankCorp*, 2019 WL 5536402, slip op. at 7 (W.D. Wash. 2019)). Plaintiff, in response, asserts that "'the mere existence of a contract does not automatically invalidate an unjust enrichment claim, as the contract may be unenforceable or may not explicitly cover the subject matter that forms the basis of the unjust enrichment claim.'" (Dkt. No. 47 at 42) (quoting *Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, 2022 WL 4534422, slip op. at 5 (W.D. Wash. 2022)). Defendants respond that "there must still be a plausible factual basis" in the amended complaint "from which to draw [a] reasonable inference that either condition might apply." (Dkt. No. 49 at 21.) On this issue, Defendants have the better argument. *See Ehreth v. Cap. One Servs., Inc.*, 2008 WL 3891270, slip op. at 3 (W.D. Wash. 2008) (dismissing unjust enrichment claim where "plaintiff does not argue that the contract is unenforceable" and "had an express contract with defendant that governed the circumstances" underlying the claim). Indeed, neither party has questioned the enforceability of the APA or TPA. (*See generally* Dkt. Nos. 35, 46, 47.) Moreover, the APA and TPA clearly govern the subject matter that forms the unjust enrichment claim—that is, whether Defendants obtained earn-out payments through unlawful means and in bad faith.

Accordingly, the Court GRANTS Defendants' motion with respect to Plaintiff's unjust

---

at 41.) Plaintiff also cites to *Bentham v. Bingham Law Grp.*, 2013 WL 12186171, slip op. at 12 (S.D. Cal 2013), ostensibly for the proposition that "where fraud or conversion accompanies a breach of contract, the [independent tort doctrine] does not bar the tort claim." (Dkt. No. 47 at 41.) But *Bentham* involved California law, and Plaintiff has not presented this Court with an equivalent categorical rule under Washington law.

ORDER
C23-1468-JCC
PAGE - 9

enrichment and DISMISSES it with leave to amend. *See Krainski*, 616 F.3d at 972.

**G.   RICO**

Plaintiff alleges Fritts violated RICO through his employees who, at Fritts' direction, engaged in an unlawful scheme to defraud Plaintiff. (*See* Dkt. No. 35 at 48–50.) Under RICO, it is "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a claim under this provision, Plaintiff must therefore allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). All requirements but the first are disputed in this case. But because Plaintiff fails to adequately allege the "pattern" element, and because this alone dooms Plaintiff's RICO claim, the Court only addresses this element.

In determining whether a defendant's conduct constituted a "pattern," courts consider the relatedness of the predicate acts and continuity. *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987). And to adequately allege continuity, a plaintiff must allege either "a closed period of repeated conduct" that persisted over a "substantial period of time" ("closed-ended continuity") or "past conduct that by its nature projects into the future with a threat of repetition" ("open-ended continuity"). *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989). Here, Plaintiff alleges closed-ended continuity[6] but, for the reasons described below, fails to adequately do so.

Under longstanding Ninth Circuit precedent, RICO's continuity requirement is not satisfied where, as here, plaintiffs merely allege "a single fraud perpetrated on a single victim." *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 360 (9th Cir.

---

[6] In response to the Court's request for supplemental briefing regarding whether Plaintiff has shown either closed or open-ended continuity (Dkt. No. 52), Plaintiff exclusively argues for closed-ended continuity. (*See* Dkt. No. 54 at 2–5.) The Court treats this as a concession that Plaintiff has failed to allege open-ended continuity.

ORDER
C23-1468-JCC
PAGE - 10

1988). Indeed, the Ninth Circuit "has found insufficient continuity in every case but two in which there was only a single victim." David B. Smith & Terrance G. Reed, *Civil RICO* ¶ 4.04 (Matthew Bender 2023). The first, *Sun Sav. & Loan Ass'n v. Dierdorff*, is an open-ended continuity case—the court found sufficient continuity where the scheme at issue posed a threat of continuing activity. 825 F.2d 187, 194 & n.5 (9th Cir. 1987) (noting that the defendant "in no way completed the criminal scheme"). Whereas here, Plaintiff fails to point to any facts indicating that Defendants did not complete the criminal scheme. The second single-victim case, *Republic of the Philippines v. Marcos*, is a *sui generis* political case in which the "single victim" was the Republic of the Philippines, not an individual or a company, and the racketeering activity was carried out on a scale far more immense than the activity at issue in this case. 862 F.2d 1355, 1358 (9th Cir. 1988) (en banc). Thus, because this case involves a single alleged victim, PCF Insurance, and because both of the Ninth Circuit's single-victim cases are distinguishable from the instant case, the Court cannot conclude that Plaintiff has adequately alleged closed-ended continuity.

In an attempt to escape this conclusion, Plaintiff relies on *Kearney v. Foley & Lardner, LLP* for the proposition that "a pattern does not require multiple victims" 607 Fed. App'x 757, 759 (9th Cir. 2015) (mem.) (citing *Sun Savings*, 825 F.2d at 191–94). But as multiple courts have noted in response to this same argument, "'the Court need not rely on an unpublished memorandum disposition [in *Kearney*].'" *Karma Auto. LLC v. Lordstown Motors Corp.*, 2022 WL 17886045, slip op. at 20 (C.D. Cal. 2022) (quoting *Palantir Tech. Inc. v. Abramowitz*, 2021 WL 2400979, slip op. at 8 n.2 (N.D. Cal. 2021)). Instead, this Court relies on the binding decision in *Medallion* which, contrary to *Kearney*, expressly limited *Sun Savings* to cases involving "a threat of continuing activity." 833 F.2d at 1364. And as the Court has previously noted, Plaintiff fails to allege any such threat in this case.

Because Plaintiff has not adequately alleged the "pattern" element, the Court GRANTS Defendants' motion to dismiss the RICO claim with leave to amend. *See Krainski*, 616 F.3d at

972. And because the conspiracy to violate RICO claim hinges on the underlying RICO claim, the Court further DISMISSES the conspiracy to violate RICO claim with leave to amend. *See id.*

### H.      Criminal Profiteering

Defendants next argue Plaintiff's criminal profiteering claim should be dismissed because, among other things, the amended complaint fails to allege a pattern of criminal profiteering activity. (Dkt. No. 46 at 39–42.) The Court agrees. "To show a pattern under the [Washington Criminal Profiteering Act], a plaintiff must make the same showing required by RICO: relationship plus continuity." *Straightshot Commc'ns, Inc. v. Telekenex, Inc.*, 2011 WL 1770935, slip op. at 8 (W.D. Wash. 2011). And here, for the reasons discussed above, *see supra* Section III.G, Plaintiff has failed to adequately allege a pattern. Accordingly, the criminal profiteering claim is DISMISSED with leave to amend. *See Krainski*, 616 F.3d at 972.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 46) is GRANTED in part and DENIED in part. Specifically, Plaintiff's claims for conversion, unjust enrichment, RICO, conspiracy to violate RICO, and criminal profiteering (Counts VII–XI) are DISMISSED. Any amendment is due within 30 days of this order. Plaintiff's remaining claims survive.

DATED this 27th day of March 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE