THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PCF INSURANCE SERVICES OF THE WEST, LLC,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JAMES FRITTS, *et al.*,<br><br>　　　　　　　　Defendants. | CASE NO. C23-1468-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' partial motion to dismiss the second amended complaint ("SAC") (Dkt. No. 61). Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.  **BACKGROUND**

This case arises out of a commercial dispute between Plaintiff PCF Insurance Services of the West, LLC ("PCF") and Defendants James Fritts, the former leader of RI Insurance Services, LLC ("RI Insurance"), as well as RI Insurance itself.[1] (*See* Dkt. No. 57 at 1.) The Court discussed most of the relevant background in its previous Order regarding Defendants' first

---

[1] Both Fritts and RI Insurance are named defendants in this case (hereinafter collectively referred to as "Defendants"). James Fritts is referred to as "Defendant."

1  motion to dismiss. (*See* Dkt. No. 56 at 1–2.) Nevertheless, it summarizes the key factual
2  allegations, as provided in the SAC (Dkt. No. 57), as follows.
3      In July 2021, Plaintiff acquired substantially all of RI Insurance's assets and retained
4  Defendant to continue running it as Plaintiff's discrete business unit, under the name Rice
5  Insurance ("Rice"). (*See id.* at ¶ 2.) As part of this sale and in order to incentivize Defendants
6  and their employees to continue growing Rice's business, Plaintiff offered a lucrative earn-out
7  bonus structure: if Rice reached certain earnings growth targets in the first five years following
8  the sale, then Plaintiff would pay Rice a multiple of that growth. (*Id.* at ¶ 33.) This incentive
9  would remain open for five years, with the first year presenting the most lucrative earn-out
10 bonus. (*Id.*) Plaintiff alleges Defendant abused and manipulated this bonus structure to his
11 benefit and, in doing so, defrauded Plaintiff of millions of dollars. (*Id.* at ¶ 1.)
12     In its first amended complaint ("FAC"), Plaintiff brought claims of fraud, breach of
13 contract, conversion, unjust enrichment, violation of the Racketeer Influenced and Corrupt
14 Organizations Act ("RICO"), 19 U.S.C. § 1961 *et seq.*, conspiracy to violate RICO, and criminal
15 profiteering under Washington state law. (*See* Dkt. No. 56 at 2.) Defendants moved to dismiss
16 the FAC, which the Court denied in part and granted in part. (*See id.*) In particular, it dismissed
17 Plaintiff's RICO and related claims with leave to amend because Plaintiff failed to adequately
18 allege a "pattern." (*See id.* at 11.) Plaintiff then filed its SAC (Dkt. No. 57) to (1) repeat and
19 reallege the claims the Court previously sustained, and (2) amend its claims of a RICO violation,
20 conspiracy to violate RICO, and criminal profiteering under state law (Counts IX, X, and XI).[2]
21 Plaintiff now alleges that, in addition to abusing Plaintiff's earn-out bonus structure, Defendants
22 made fraudulent misrepresentations to various entities, all in furtherance of their ultimate scheme
23 to defraud Plaintiff. (*See generally id.*)
24     Defendants once again move to dismiss the RICO claim, as well as the related conspiracy

---

[2] The Court also previously dismissed Plaintiff's claims of conversion and unjust enrichment. (*See* Dkt. No. 56 at 12.) The SAC does not reallege these claims. (*See* Dkt. No. 57 at 1.)

and state law criminal profiteering claims. (*See generally* Dkt. No. 61.) They do not seek dismissal of other claims included in the SAC. (*See generally id*.)

## II. DISCUSSION

### A. Legal Standard

Dismissal is proper when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. As such, a plaintiff must provide grounds for their entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Dismissal under Rule 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### B. RICO

Under RICO, it is "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Correspondingly, to state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). Defendants argue that Plaintiff once again fails to adequately plead the "pattern" element, as well as the "racketeering activity" element. (Dkt. No. 61 at 11–12.) Because, in the Court's view, Plaintiff still fails to adequately allege the "pattern" element, and because this alone continues to doom Plaintiff's RICO claim, the Court only addresses this element.

1. The "Pattern" Element

To adequately plead a "pattern," a RICO plaintiff must "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). That is, a RICO plaintiff must show some relationship between (1) the predicate acts and (2) the continuity of such acts.[3] *See id*. A relationship is shown where criminal acts "have the same or similar purposes, results, participants, victims, or methods of commission." *Id.* at 240. Moreover, where a RICO plaintiff alleges multiple victims[4], as is the case here, the alleged RICO victims must be the "intended object of the scheme," as "[v]irtually every imaginable scheme has some effect on [third] parties . . . , and to hold that an indirect effect satisfies RICO's continuity requirement would unreasonably expand the scope of the RICO statute." *Straightshot Commc'ns Inc. v. Telekenex, Inc.*, 2010 WL 11488936, slip op. at 6 (W.D. Wash. 2010).

This Court previously dismissed Plaintiff's RICO claims on the grounds that Plaintiff alleged "'a single fraud perpetrated on a single victim'," and therefore failed to adequately allege a pattern. (Dkt. No. 56 at 10) (quoting *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 360 (9th Cir. 1988)). Now, in an attempt to cure its prior RICO pleading deficiencies, Plaintiff asserts that there were, in fact, multiple "frauds" perpetrated on multiple "victims." (*See generally* Dkt. No. 57; *see also* Dkt. No. 73 at 16.) These alleged "victims" and the purported "frauds" Defendants committed against them can be summarized as follows:

---

[3] Moreover, to adequately show continuity, a plaintiff must allege either "a closed period of repeated conduct" that persisted over a "substantial period of time" ("closed-ended continuity") or "past conduct that by its nature projects into the future with a threat of repetition" ("open-ended continuity"). *Id.* at 241–42. However, because Plaintiff continues to allege close-ended continuity, (*see* Dkt. No. 73 at 16), the Court declines to explore this distinction further.

[4] The Ninth Circuit "has held the continuity requirement satisfied in every case in which there were multiple victims;" by contrast, it "has found insufficient continuity in every case but two in which there was only a single victim." David B. Smith & Terrance G. Reed, *Civil RICO* ¶ 4.04 (Matthew Bender 2023). The Court previously found the two sole "single victim" cases in the Ninth Circuit inapplicable to the case at bar. (*See* Dkt. No. 56 at 10–11.)

- *Plaintiff*, through Defendants' preparation and delivery of "falsified financial data which was intended to, and did, artificially inflate" the earn-outs (Dkt. No. 73 at 17);
- *AUW/AUO, and Silver Lake*, through purchases of their respective "books of business" conducted under the guise of RI Insurance, but whose revenue was "reported as Rice income when Rice reported its EBITDA to PCF," (Dkt. No. 57 at ¶¶ 132–4, 142–7, 151);
- *Defendants' own bank, KeyBank, as well as the banks of PCF and PCF clients*, by "impermissibly signing and depositing carrier disbursement checks intended for and made out to PCF into RI Insurance's KeyBank Account," (Dkt. No. 73 at 17), so as to "manipulate the timing of the Rice business's reported earnings in order to manipulate its EBITDA and thus obtain unearned Earn-Out Payment amounts," (Dkt. No. 57 at ¶ 155); and,
- *The State of Washington*, through the submission of falsified business records to the state Employment Security Department ("ESD") in response to an audit request, (Dkt. No. 73 at 17), and for the purpose of "maintain[ing] the secrecy of [Defendants'] fraudulent schemes." (Dkt. No. 57 at ¶ 175.)

Defendants argue that the above categories of "victims" (and, by proxy, the purported "frauds" they suffered) are "ancillary" or "tangential" to a singular alleged scheme, and thus they do not constitute victims for purposes of RICO. (Dkt. No. 61 at 15.) The Court agrees. Indeed, based on the facts as pled, the Court cannot reasonably infer that AUW/AUO, Silver Lake, the banks, or the State of Washington constitute "victims" as contemplated under longstanding Ninth Circuit RICO law. Plaintiff fails to explain how each of these "victims" were "an *intended* object of the scheme," when the only alleged scheme was to abuse *Plaintiff's* earn-out bonus structure. *See Telekenex, Inc.*, 2010 WL 11488936, slip op. at 6 (emphasis added); (*see also* Dkt. No. 57 at ¶¶ 139, 151, 155–7, 175) (explaining how Defendants made certain misrepresentations against each of the above categories of "victims" *in furtherance of* the ultimate scheme: to abuse

Plaintiff's earn-out structure). Instead, the Court finds that the alleged "victims" are third parties that endured the collateral consequences, if any, of Defendants' single scheme targeted at Plaintiff alone.

In so finding, this Court once again relies on *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.* as binding authority. *See* 833 F.2d 1360, 1363 (9th Cir. 1987). In *Medallion*, the Ninth Circuit declined to treat certain third parties to a joint venture as "victims" because the third parties "got what [they] bargained for" and were not otherwise victims of the "supposed fraud." *Id*. at 1364 n.3. The plaintiff alleged a scheme wherein the defendant misrepresented the amount of licensing agreements it had secured so as to induce plaintiff into a joint venture to acquire and sell broadcast rights for a major professional boxing match. *Id*. at 1361. On appeal, the plaintiff added the financier, fight promoter, and TV stations as additional victims, arguing that they too were defrauded by the defendant's false claims about its number of licensing agreements. *Id*. at 1364 n.3. However, the court was unconvinced, reasoning instead that the third parties could not have been victims because they "got what [they] bargained for"— they either sold to or acquired from the joint venture the broadcast rights to the boxing match. *Id*. In turn, the court found that the defendant's misrepresentations towards these third parties were merely "parts of its single effort to induce Medallion to form the joint venture in order to obtain the broadcast rights from the promoters," and therefore insufficient to show a RICO "pattern." *Id*. at 1364–5.

Similarly, in *Telekenex*, that court declined to treat plaintiff SCI's customers as victims because "[v]irtually every imaginable scheme has some effect on [third] parties," and thus to treat any "indirect effect" as a pattern "would unreasonably expand the scope of the RICO statute." 2010 WL 11488936, slip op. at 6. SCI argued that its customers were victims because when defendant Mammoth cut off its services to SCI as part of the RICO scheme, such termination of services forced SCI to cease operations and, in turn, injured SCI's customers and induced SCI to transfer its business to Telekenex. *Id*. at 2. The court disagreed, finding instead

that "there is nothing inherently fraudulent about Mammoth's decision to discontinue service to those customers." *Id*. at 6. As such, the court concluded that SCI's allegations constituted only "a single episode of criminal conduct with a definitive goal: the complete dismantling of SCI as a company, and the transfer of its business to Telekenex," and therefore dismissed SCI's complaint for failure to state a pattern. *Id*.

The case at bar is analogous to *Medallion* and *Telekenex*. Just as in *Medallion*, where the third party "victims" ultimately "got what they bargained for," 833 F.2d at 1364 n.3, here too Silver Lake and the banks got what they bargained for—Silver Lake sold its book of business, (*see* Dkt. No. 73 at 17), and the banks either sent, received, or held the disbursement checks as was their intended purpose. (*See* Dkt. No. 57 at ¶¶ 141–154, ¶¶ 155–164.) To the extent Defendants delayed the timing of when they deposited the client disbursement checks into Plaintiff's bank so as to manipulate the earn-out structure (as Plaintiff alleges was Defendants' fraudulent scheme here), (*see* Dkt. No. 57 at ¶ 155), such delay is not unlike the customers in *Telekenex* that temporarily lost service—the delay was certainly an inconvenience for *Plaintiff*, but there is nothing inherently fraudulent towards *the banks* about when one chooses to deposit a check. *See* 2010 WL 11488936, slip op. at 6. Instead, the delay was merely an "indirect effect" of Defendants' ultimate scheme to manipulate the timing of Rice's reported earnings to Plaintiff and thereby defraud Plaintiff. *See id*. As such, neither KeyBank, Plaintiff's bank, nor Plaintiff's client's banks were the "intended object" of the alleged scheme, and this Court cannot conclude that Plaintiff has adequately plead Silver Lake or the banks as RICO victims.

As for ESD and AUW/AUO, the facts as pled do allege some serious foul play on the part of Defendants. (*See, e.g.*, Dkt. No. 57 at ¶¶ 84–85, 87 (alleging Defendants conducted negotiations with AUW/AUO under the guise of RI Insurance); ¶¶ 170–174 (providing specific examples of falsified business records Defendants submitted to ESD).) Nevertheless, taking these allegations as true, the Court still cannot reasonably infer that these entities were "intended object[s]" of Defendants' alleged scheme. With respect to ESD, Plaintiff alleges that Defendants

made off-book salary payments as part of their single effort to "inflate the earn-outs." (*Id.* at ¶ 12). Then, when ESD's audit threatened to expose Defendants' fraudulent scheme, Defendants submitted falsified business records to ESD so as to conceal its off-book salary payments. (*See id.* at ¶ 165.) In other words, Defendants necessarily needed to conceal their fraudulent acts *against Plaintiff*, and thus submitted falsified business records to ESD; but, as pled, ESD was not the "intended object" of Defendants' scheme to inflate the earn-outs. As such, the Court fails to see how ESD suffered anything other than an "indirect effect" of the alleged scheme, and declines to treat ESD as a RICO victim.

Similarly, in the case of AUW/AUO, while the Court must take as true that "[n]either RI Insurance nor Fritts paid the purchase price for AUW/AUO's assets," (*id.* at ¶ 136), it also cannot reasonably conclude that the failure to pay the purchase price renders AUW/AUO an "intended object" of Defendants' scheme. Indeed, Plaintiff's own allegations suggest that Defendants' transactions with AUW/AUO were solely for the purpose of manipulating Rice's EBITDA so as to abuse Plaintiff's earn-out structure. (*See id.* at ¶ 139) (noting that PCF would have treated the source of income from the AUW/AUO book of business differently for purposes of calculating the Rice business's EBITDA if Defendant had not executed the AUW/AUO purchase agreement in RI Insurance's name). As such, the Court cannot conclude that AUW/AUO constitutes a RICO victim.

To summarize, because Plaintiff has not adequately alleged any victims other than Plaintiff itself, and because the Court declines to apply "single victim" cases to this one, Plaintiff fails to adequately state the requisite "pattern." Accordingly, the Court GRANTS the motion as to Plaintiff's RICO claim. And again, because the conspiracy to violate RICO claim hinges on the underlying RICO claim, the Court further GRANTS the motion as to the conspiracy to violate RICO claim.

### C. Criminal Profiteering

Defendants argue again that Plaintiff's criminal profiteering claim should be dismissed

because the SAC does not allege the elements of a substantive RICO violation. (*See* Dkt. No. 61 at 27.) And once again, the Court agrees. "To show a pattern under the [Washington Criminal Profiteering Act], a plaintiff must make the same showing required by RICO: relationship plus continuity." *Telekenex*, 2011 WL 1770935, slip op. at 8. And here, for the reasons discussed above, *see supra* Section II.B, Plaintiff has failed to adequately allege a pattern. Accordingly, the Court GRANTS the motion as to the criminal profiteering claim.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS the partial motion to dismiss (Dkt. No. 61) and DISMISSES with prejudice[5] Plaintiff's claims for RICO, conspiracy to violate RICO, and criminal profiteering.

DATED this 23rd day of August 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[5] Given Plaintiff's multiple attempts to cure the pleading deficiencies associated with these claims, it appears that leave for further amendment would be futile. *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).