THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PCF INSURANCE SERVICES OF THE
WEST, LLC,

                    Plaintiff,

     v.

JAMES FRITTS, *et al.*,

                    Defendants.

CASE NO. C23-1468-JCC

ORDER

This matter comes before the Court on non-party Lisa Fritts's ("Ms. Fritts") motion to quash the subpoena *duces tecum* and subpoena to testify (Dkt. No. 72), Defendants' motion to compel (Dkt. No. 74), and Plaintiff's omnibus motion to compel (Dkt. No. 77). Having duly considered the record and briefing, the Court finds oral argument unnecessary and rules as follows: Ms. Fritts's motion to quash (Dkt. No. 72) is GRANTED in part and DENIED in part, Defendants' motion to compel (Dkt. No. 74) is GRANTED in part and DENIED in part, and Plaintiff's omnibus motion to compel (Dkt. No. 77) is GRANTED in part and DENIED in part.

## I.     DISCUSSION

The Court has stated the facts of this case, including those relevant to the instant discovery motions, in prior orders, (*see* Dkt. Nos. 56, 103), and will not restate them here. As the Court so often states, it strongly disfavors discovery motions and prefers that parties resolve such

disputes on their own. *See, e.g., Larson Motors Inc. v. Gen. Motors LLC*, 2023 WL 346623, slip op. at 1 (W.D. Wash. 2023).[1]

Nevertheless, a party is entitled to discover nonprivileged information that is (1) relevant to any party's claims or defenses and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible, but must be reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *see Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). Proportionality requires consideration of, among others, the parties' relative access to relevant information and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). In turn, the Court may limit discovery to protect a party from annoyance, embarrassment, oppression, or undue burden. Fed. R. Civ. P. 26(c)(1).

### A.     Non-party Lisa Fritts's Motion to Quash (Dkt. No. 72)

A district court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(a)(iv). Non-parties, in particular, are "protected against significant expense resulting from involuntary assistance to the court." Fed. R. Civ. P. 45, Advisory Committee Note of 1991, subdivision (c). Indeed, the Ninth Circuit has noted that broader restrictions on discovery may be necessary "when a nonparty is the target of discovery" so as "to protect [them] from harassment, inconvenience, or disclosure of confidential documents." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 647 (9th Cir. 1980).

#### 1.   Merits of the Motion to Quash

Ms. Fritts is the wife of Defendant James Fritts ("Defendant")[2]. She moves to quash Plaintiff's subpoena *duces tecum* and subpoena to testify on the basis that they (1) impose an

---

[1] Moreover, the Court maintains broad discretion to control the discovery process. *See, e.g., Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

[2] For purposes of this Order, the Court uses "Defendant" and "Mr. Fritts," as well as "Plaintiff" and "PCF," interchangeably. The Court continues to use "Defendants" in reference to Mr. Fritts and RI Insurance.

1   undue burden because they seek information that could be obtained more easily and with less

2   effort from Defendants, and (2) seek testimony that is protected by Washington's spousal

3   testimonial privilege. (*See* Dkt. No. 72 at 12, 14.) In response, Plaintiff argues that (1) Ms. Fritts

4   possesses independent knowledge of relevant information that cannot be obtained from Mr. Fritts

5   or other parties,[3] and (2) that the spousal testimonial privilege does not apply.

6      ***Subpoena duces tecum.*** While the Court acknowledges that some of the requests for

7   production seek relevant information,[4] it nevertheless finds them exceedingly overbroad.

8   However, the Court declines to narrow the requests because it finds that, even if narrowed, the

9   burden these requests impose on Ms. Fritts far outweigh the likely benefit of her production. In

10  particular, the Court agrees with Ms. Fritts that the subpoena seeks information which could be

11  obtained more easily, and with less effort, from Defendant himself, *or even from Plaintiff's own*

12  *records*. For example, to the extent Ms. Fritts assisted in the planning of Rice's annual producer

13  parties or other social gatherings, such planning necessarily required assistance from a Rice or

14  PCF employee—a point Plaintiff itself made in its opposition to the motion to quash. (*See* Dkt.

15  No. 82 at 14.) Similarly, any such reimbursement from the KeyBank account would have

16  necessarily gone through Defendants. (*See* Dkt. No. 85 at 5) ("PCF's own exhibits show that Mr.

17  Fritts paid for the party and handled reimbursement"). As such, the Court cannot fathom how

---

18
19  [3] Plaintiff alleges that Ms. Fritts (1) planned annual producer parties and other social gatherings
    for Rice employees, (2) received reimbursement for expenses related to these social events from
20  the KeyBank account, which Defendant allegedly used to further his fraudulent scheme, and (3)
    allowed Defendant to use her phone to call a co-conspirator, Mr. Heerspink, on at least two
21  occasions while Defendant was on leave. (*See* Dkt. No. 82 at 9–10.) Plaintiff contends that Ms.
    Fritts's aforementioned conduct entitles it to seek essentially all documents and communications
22  Ms. Fritts had with any Rice or PCF affiliates, including Defendant himself, relating to anything
    described in the operative complaint. (*See id*.; *see also* Dkt. No. 72-2) (Plaintiff's subpoena
23  *duces tecum* for Ms. Fritts).

24  [4] For example, Plaintiff seeks "[a]ll Documents and Communications referring or relating to
    parties or celebratory events for PCF or Rice employees," (Dkt. No. 72-2 at 10), to show that Ms.
25  Fritts "received reimbursement for expenses for those parties out of the KeyBank account Fritts
    used to further his fraudulent scheme." (Dkt. No. 82 at 9–10). Plaintiff also argues that
26  information regarding said social gatherings is relevant to show witness bias.

Ms. Fritts possesses material regarding producer parties or other social gatherings "implicated in [Defendant's] fraudulent scheme," that is not otherwise available through discovery sought from Defendants, or from Plaintiff's own records.

Plaintiff further relies on a September 2, 2023, phone call between Defendant and Mr. Heerspink to suggest that "Ms. Fritts allowed her husband to use her personal phone to continue communicating with his co-conspirators without PCF becoming aware." (Dkt. No. 82 at 10.) The Court fails to see how one clandestine phone call between Defendant and Mr. Heerspink, wherein Mr. Heerspink overheard Ms. Fritts telling Defendant to "hang in there," (Dkt. No. 83 at 241), renders Ms. Fritts's entire phone history and communications discoverable. In fact, per Plaintiff's own assertion, the phone call (and any alleged subsequent phone calls) necessarily took place between Defendant and co-conspirators, not between Ms. Fritts and any co-conspirators. (*See* Dkt. No. 82 at 10.) As such, it would seem that any information regarding these phone calls can and should be sought from Defendant—not from Ms. Fritts.

Because the subpoena *duces tecum* seeks information from Ms. Fritts that Plaintiff can seek from a party, or that Plaintiff can retrieve from its own records, and because broader restrictions apply to discovery targeted at non-parties,[5] the Court finds it highly disproportional to the needs of the case and a significant inconvenience for Ms. Fritts. Accordingly, the Court GRANTS the motion to quash the subpoena *duces tecum*.

**Subpoena to Testify.** Under Washington state law, a spouse cannot be "examined for or against his or her spouse" or "examined as to any communications made by one to the other during the marriage," without the consent of the other spouse.[6] RCW 5.60.060. Plaintiff's

---

[5] To this point, Ms. Fritts further notes that the Subpoenas are "copy-and-pasted from past RFPs to Defendants" and that, "[i]f PCF believes such productions are incomplete, the appropriate remedy is to meet and confer with Mr. Fritts, not to subpoena his wife." (*Id*.) The Court agrees.

[6] Plaintiff argues that this is a federal question case with pendant state law claims, and therefore state law does not apply here. (Dkt. No. 82 at 14.) Not so. Following the Court's order dismissing Plaintiff's RICO and related claims, (*see* Dkt. No. 103), the only claims that remain

subpoena seeks to have Ms. Fritts testify against her husband without her husband's consent, (*see generally* Dkt. No. 72-3), and thus seeks testimony that is protected under Washington state law. As such, the Court GRANTS the motion to quash the subpoena to testify.

2. <u>Sanctions</u>

Sanctions are appropriate where a party issues a subpoena that is oppressive, facially defective, or in bad faith on the part of the requesting party. Fed. R. Civ. P. 45(d)(1); *see also Santacruz v. Southbank Diaries, LLC*, 2016 WL 6997086, slip op. at 3 (W.D. Wash. 2016) (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012)).

Ms. Fritts requests this Court sanction Plaintiff for "attempting to harass and to impose an undue burden" on her. (Dkt. No. 72 at 16.) Plaintiff argues sanctions are not warranted because it only served the subpoenas on Ms. Fritts "*after* a deposition and document review revealed that Ms. Fritts had critical information." (Dkt. No. 82 at 16.) While Ms. Fritts has succeeded in her motion to quash, the Court nonetheless agrees with Plaintiff that sanctions are not warranted—Plaintiff has shown that it did not issue the subpoenas in bad faith, and the subpoenas are not otherwise oppressive or facially defective. Ms. Fritts' request for sanctions is DENIED.

**B.     Defendants' Motion to Compel (Dkt. No. 74)**

If a party inappropriately withholds or fails to answer a discovery request, the requesting party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1); *David v. Hooker, Ltd.*, 560 F.2d 412, 418 (9th Cir. 1977). The movant must demonstrate that "the information it seeks is relevant and that the responding party's objections lack merit." *Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 390 (W.D. Wash. 2017). Defendants move to compel Plaintiff to produce four broad categories of documents: (1) documents related to PCF's financial condition,

---

are state law claims, and the Court's jurisdiction is based on diversity alone. Where the underlying claims are predicated on state law, the privilege issues are also governed by state law. *See* Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a . . . person . . . shall be determined in accordance with State law.")

as well as its policies and practices; (2) documents related to other PCF-owned agencies; (3) documents related to PCF employees who are knowledgeable about the litigation and, in particular, who participated in PCF's internal audit of Mr. Fritts; and (4) documents that appear in Plaintiff's ESI search, per certain proposed search terms. (*See* Dkt. No 74 at 13–14.)

### 1. Documents Related to PCF's Financial Condition, Policies, and Practices

Defendants assert that documents related to Plaintiff's financial condition, policies, and practices "are fundamental to develop and prove Defendants' defenses and counterclaims," which purportedly will show that PCF "singled out Mr. Fritts for unprecedented treatment," "applied its contracts and policies in a prejudicial, unfair, and in some cases unprecedented manner," and "generally had ulterior motives for initiating the audit and falsely shaping its findings so that it could terminate Mr. Fritts." (*Id*. at 11.)

Plaintiff, in turn, argues that "the motives for terminating Fritts's employment are not at issue: this is not a wrongful termination action and nothing about this case implicates employment law." (Dkt. No. 90 at 15.) The Court agrees. Thus, to the extent Defendants seek documents to support their purported counterclaims, the Court reminds Defendants that Rule 26(b)(1)'s liberal discovery only entitles a party to information that is relevant to present claims or defenses—not future counterclaims. *See* Fed. R. Civ. P. 26(b)(1). First RFP Nos. 6 and 8, as well as Second RFP Nos. 25 and 30–31, thus seek irrelevant information.

However, to the extent Defendants seek documents regarding PCF's financial and accounting practices to show that Defendant was, in fact, compliant with PCF's policies and thus did not breach the very contracts Plaintiff alleges he breached, such documents are plainly relevant to a possible contract interpretation defense. Thus, Second RFP Nos. 24 and 32 are relevant. The Court GRANTS the motion to compel with respect to Second RFP Nos. 24 and 32.

### 2. Documents Related to Other PCF-Owned Agencies

Defendants seek a host of documents related to how PCF interacted with other agencies, including disputes over similar earn-out provisions with other agency principals. (*See* Dkt. No.

74 at 13–14.) They argue, among other things, that such information is relevant to show how Plaintiff's handling of Mr. Fritts's earnout payments is "inconsistent with its prior—or even contemporaneous—practices and interpretations of similar clauses," thus inferring a contract interpretation defense. (*Id.* at 14.) Plaintiff counters that its agreements with other agencies are wholly irrelevant because the parol evidence rule limits admissible extrinsic evidence *only* to that which reveals the parties' *mutual* intent at the time of contracting, and Plaintiff's agreements with *other* agencies reflect only Plaintiff's *unilateral* intent. (*See* Dkt. No. 90 at 16) (citing *Microsoft Corp. v. Immersion Corp.*, 2008 WL 11343447, slip op. at 3 (W.D. Wash. 2008)). The Court agrees. While relevant information need not be admissible, *see* Fed. R. Civ. P. 26(b)(1), it must nonetheless be reasonably calculated to lead to the discovery of admissible evidence. *See Surfvivor*, 406 F.3d at 635. Given the parol evidence rule and per *Microsoft*, the Court concludes that Defendants' request to review PCF's documents with *other* agencies is not reasonably calculated to lead to the discovery of admissible evidence regarding inconsistent interpretation of PCF's contracts with *Defendants*. The Court DENIES Defendants' motion to compel (Dkt. No. 74) with respect to requests related to other PCF-owned agencies (First RFP No. 8 and Second RFP Nos. 15–18, 30, 33). The Court further DENIES Defendants' related request to treat Steve Redd and Tim Radcliff as custodians for purposes of Plaintiff's ESI search.[7]

### 3.  Documents Related to Certain PCF Employees

Defendants further seek to compel Plaintiff to include certain custodians as part of its ESI search: (1) individuals in PCF's leadership who necessarily interacted with Mr. Fritts (Jenni Lee Crocker, Jeff Hutchins, and Rocky Steele); and (2) individuals who participated in PCF's internal audit of Mr. Fritts. (*See* Dkt. No. 74 at 16–17.)

---

[7] Steve Redd and Tim Radcliff are two principals of other agencies owned by PCF. Defendants contend the two principals are relevant custodians because they also had contract disputes with PCF regarding similar earn-out provisions. (*See* Dkt. No. 74 at 16.)

1    ***Jenni Lee Crocker and Jeff Hutchins.*** The parties appear to be at an impasse regarding

2    the temporal scope of a search through Ms. Crocker's and Mr. Hutchins's ESI. (*See* Dkt. No. 93

3    at 11–12.) However, because the parties have agreed to narrow the parameters for Ms. Crocker

4    and Mr. Hutchins to "the review and assessment of PCF's purported audit and investigation of

5    Mr. Fritts," (*see* Dkt. No. 74 at 15 n.2; *see also* Dkt. No. 90 at 20–21) (expressing agreement),

6    and because the audit began on June 1, 2023, (*see* Dkt. No. 93 at 12), this Court finds that the

7    period of June 1, 2023, to September 20, 2023 (the date of Plaintiff's original complaint), is

8    appropriate. The Court GRANTS Defendants' motion to compel with respect to Ms. Crocker and

9    Mr. Hutchins, subject to the aforementioned parameters.

10       ***Rocky Steele.*** The Court finds that Mr. Steele is a relevant custodian to the extent he

11   maintains any documents "concerning the signing of contracts" or "interpretation of earnout

12   provisions" *specifically* for Defendants or Rice, or, like Ms. Crocker and Mr. Hutchins, was

13   involved in the audit and investigation of Mr. Fritts. (Dkt. No 93 at 12.) Plaintiff asserts there is

14   an "inherent burden of reviewing a legal team member's email," (Dkt. No. 90 at 21), but does

15   not otherwise explain the burden with the number of pages or documents subject to review, the

16   number of hours required to review, or any other consideration. And a review for privilege, while

17   tedious, is insufficient alone to show undue burden. *See Jackson v. Montgomery Ward & Co.,

18   Inc.*, 173 F.R.D. 524, 529 (D. Nev. 1997) ("[J]ust because complying with a discovery request

19   will involve expense or may be time consuming, [it] does not make it unduly burdensome."). As

20   such, the Court GRANTS Defendants' motion to compel with respect to treating Mr. Steele as a

21   custodian, again subject to the aforementioned parameters.

22       ***Individuals Who Participated in Plaintiff's Internal Audit of Mr. Fritts.*** Defendants

23   merely assert that these individuals "necessarily hold[] relevant information that Defendants are

24   entitled to explore." (Dkt. No. 74 at 17.) However, Defendants fail to explain how they are

25   relevant to specific claims or defenses at bar. (*See id*.) Thus, the Court DENIES Defendants'

26

1  request to treat these individuals as custodians, and similarly DENIES Defendants' motion to

2  compel production pursuant to RFP No. 31.

3          4.   Documents that Appear in Plaintiff's ESI Search per Certain Search Terms

4          Defendants also move to compel Plaintiff to include Defendants' proposed search terms

5  per its April 30 Letter. (*See* Dkt. No. 74 at 17) (citing Dkt. No. 75-11 at 5) (letter at issue).

6  Defendants assert that Plaintiff has only objected to these search terms on the basis of

7  overbreadth and cite to Plaintiff's June 10 Letter. (*See* Dkt. No. 74 at 17) (citing Dkt. No. 75-13)

8  (letter at issue). However, Plaintiff's June 10 Letter clearly states: "[Y]ou continue to include

9  search terms that have no relevance whatsoever to PCF's claims in this action." (Dkt. No. 75-13

10  at 3.) Moreover, Defendants have not made a meaningful attempt to show that their proposed

11  search terms are relevant—arguing instead that "PCF's own analysis showed hits on the terms,

12  and these terms are based on Defendants' own knowledge and assessment of the dispute." (Dkt.

13  No. 93 at 14.) The fact that these search terms happen to appear in certain documents does not,

14  on its own, explain their relevance. The Court DENIES Defendants' motion to compel with

15  respect to the additional search terms.

16          5.   Request for a Production Deadline

17          Defendants further request an order from this Court compelling Plaintiff to "complete

18  production of all document categories it previously agreed to produce to the extent those

19  documents are not yet produced as of the noting date of this Motion." (Dkt. No. 74 at 18–19.) Per

20  the Civil Trial Scheduling Order (Dkt. No. 48), the parties have until February 24, 2025, to

21  complete discovery. Given that the parties have almost six months to complete discovery, the

22  Court does not find that an order setting a final production deadline is necessary at this time. The

23  Court DENIES the request for a production deadline.

24          6.   Attorney Fees

25          The Court DENIES Defendants' requests for attorney fees and costs related to its motion

26  to compel (Dkt. No. 74). Defendants have not succeeded on their motion in full and, in any

1   event, Plaintiff's nondisclosure, response, and objections were substantially justified. *See* Fed. R.

2   Civ. P. 35(a)(5)(A) (requiring a court not to order payment of attorney fees if the opposing

3   party's "nondisclosure, response, or objection was substantially justified.")

4     **C.** **Plaintiff's Omnibus Motion to Compel (Dkt. No. 77)**

5     Plaintiff seeks an order from the Court (1) compelling Mr. Fritts to deliver his phones and

6   computers to a neutral forensic examiner "so that PCF can understand whether additional

7   relevant data exists and whether spoliation has occurred"; and (2) ruling that Mr. Fritts has

8   waived attorney-client privilege over any documents or communications in PCF's possession.

9   (Dkt. No. 77 at 8–9.)

10      1. <u>Forensic Examination</u>

11     Plaintiff asserts that a neutral forensic examination of Defendant's devices is necessary

12   because (1) Defendant purportedly maintains "burner numbers" through an app on his phone

13   called "Unlisted," and Defendant continues to evade production with respect to these "burner

14   numbers," (*see id.* at 29–30); (2) Defendant initially failed to disclose the existence of a second

15   laptop (the "Galaxybook"), and this failure to disclose leads Plaintiff to question whether the

16   production that ultimately came from the second laptop is complete, (*see id.* at 19–20, 30–31;

17   and (3) Defendant's production of his text messages is incomprehensible and missing either

18   attachments or key context in relevant text chains, (*id.* at 24–26).

19     ***Burner Numbers.*** Plaintiff asserts that Defendant violated the terms of his leave by

20   using an application on his phone called "Unlisted," which allowed him to communicate

21   anonymously with PCF employees while on leave by assigning his communications with a

22   different phone number—that is, the "burner numbers." (*See* Dkt. No. 77 at 20.) Plaintiff

23   contends, contrary to Defendants' assertions, that these burner numbers still exist on Defendant's

24   phone and that he either has not produced their related data in full or has deleted them entirely.

25   (*Id.* at 30.) To support this assertion, Plaintiff notes that it had subpoenaed "Unlisted's parent

26   company, Fathomtel, requesting their records of Fritts's use of the Unlisted app," and that

Fathomtel informed Plaintiff "that all of Fritts's messages had been purged as a result of Fritts's actions." (*Id.* at 24.) Plaintiff, however, does not cite to any document reflecting a statement from Fathomtel that Defendant's messages were "purged." (*See generally id.*)

Defendants, in turn, confirm that their discovery vendor "took custody of and imaged Mr. Fritt's phone and newly-acquired laptop on October 2, 2023, shortly after this litigation was initiated," and cite to the vendor's declaration in support of Defendants' motion. (Dkt. No. 87 at 13) (citing Dkt. No. 88-1 at 76). Defendants further confirm that, per their discovery vendor, "all data from Unlisted was produced, no other applications capable of generating temporary numbers were found on Mr. Fritts's phone, and there was no evidence of reset or mass deletion on any of Mr. Fritts's devices." (Dkt. No. 87 at 13.) Moreover, as Defendants note in their surreply (Dkt. No. 98), Plaintiff's *own* exhibit corroborates Defendant's position that he produced all evidence of all communications from the Unlisted app. (*Id.* at 2.) As such, based on the record before it, the Court concludes that Defendants have fulfilled their discovery obligations with respect to data in the Unlisted app.

***Galaxybook Laptop.***  The dispute around the Galaxybook ultimately boils down to differences in how the parties interpret Defendants' November 14, 2023, Letter to Plaintiff (Dkt. No. 78-1 at 12–15). In the Court's view, Plaintiff has mischaracterized Defendants' assertions in the November 14, 2023, Letter and placed them out of context.[8] (*See* Dkt. No. 87 at 15–16.) As such, the Court does not find that Defendants have "concealed" or otherwise made a questionable disclosure with respect to the Galaxybook.

---

[8] According to Plaintiff, Mr. Fritts misrepresented the number of laptops in his possession—asserting in the November 14, 2023, Letter to Plaintiff that he only had the Dell Latitude 3520 laptop, (*see* Dkt. No. 78-1 at 13) (hereinafter "Dell Laptop"), when in fact Mr. Fritts also maintained the Galaxybook. (*See* Dkt. No. 77 at 19.) In turn, Defendants note that the November 14, 2023, Letter was written in the *specific* context of Plaintiff's demand that Mr. Fritts return the Dell Laptop, which Plaintiff acquired when it purchased RI Insurance and to which Plaintiff was entitled upon Mr. Fritts's termination. (*See* Dkt. No. 87 at 16.) Defendants further acknowledge in their response to Plaintiff's RFAs that Mr. Fritts only purchased the Galaxybook for personal purposes *after* PCF placed him on suspension. (*See id.*)

1
2
3
4
5
6
7
8
9
10
11

***Text Messages.***  Lastly with respect to the request for a neutral forensic examination, Plaintiff argues that Defendant has "manipulated the documents" by "providing only fragments of text message conversations that omit his active participation in those conversations." (Dkt. No. 77 at 31.) Based on the record before it, (*see* Dkt. No. 79 at 24–26), the Court is inclined to agree. However, because Defendants have offered to revisit any text messages with which Plaintiff took issue, and because Defendants "continue to assess the completeness of their productions" and "will produce any responsive, inadvertently omitted messages," (Dkt. No. 87 at 21), the Court is amenable to giving Defendants a chance to cure their incomplete production. However, should the Court be faced with another glaring example of incompleteness, it will have no choice but to grant a subsequent motion to compel a forensic examination of Defendant's text messages, as well as entertain a request for sanctions.

12
13

For these reasons, the Court DENIES without prejudice Plaintiff's motion to compel Defendant to submit his devices for a forensic examination.

14

2.  Attorney-Client Privilege

15
16
17
18
19

Finally, Plaintiff seeks access to communications Defendant had with attorneys both before ("pre-closing") and after ("post-closing") Plaintiff acquired Rice ("the Sale"). (*See* Dkt. No. 77 at 33–37.) Plaintiff contends that attorney-client privilege is inapplicable here because Defendant continued to store these communications on his Dell Laptop even after Plaintiff acquired the laptop as part of the Sale. (*See id*.) The Court agrees with Plaintiff on both fronts.

20
21
22
23
24
25
26

"In Washington, the party asserting the attorney-client privilege has the burden of proving all the elements of privilege, including the absence of waiver." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1106 (W.D. Wash. 2011). Moreover, "[f]or the privilege to apply, the client must have a reasonable expectation that the communications are confidential and will be kept confidential." *Id*. at 1108. As such, "[i]f a client is informed that there may be disclosure to a third-party, there is no reasonable expectation of confidentiality and the privilege never attaches." *Id*.

1   In the specific context of evaluating whether an employee who uses a company computer

2   to transmit, store, or save personal communications has waived attorney-client privilege, this

3   Court (applying Washington state law) has applied the four-factor test from *In re Asia Global*,

4   322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005). *See id.* at 1108–09. The *Asia Global* factors are: (1)

5   whether the company maintains a policy of banning personal or other objectionable use, (2)

6   whether the company monitors the use of the employee's computer or e-mail, (3) whether third

7   parties have a right of access to the computer or e-mails, and (4) whether the corporation notified

8   the employee, or the employee was aware, of the policy. *Id.* at 1109 (*citing Asia Global*, 322

9   B.R. at 257).

10   **_Pre-closing Communications._**  Plaintiff asserts that the *Asia Global* factors are met here:

11   PCF maintained an explicit policy discouraging use of company technology for personal affairs

12   (Factor 1); the policy gave PCF the right to monitor and access company technology at any time

13   in its sole discretion (Factors 2 and 3); and Defendant was aware of these policies because he

14   expressly signed an acknowledgement of said policies (Factor 4). (*See* Dkt. No. 77 at 35–36.)

15   Defendants do not dispute Plaintiff's application of *Asia Global*; instead, Defendants assert that

16   only Schedule 1.2 of the parties' Asset Purchase Agreement governs.[9] (*See* Dkt. No. 87 at 23.)

17   But Defendants confuse the issue. The issue is not whether Plaintiff ever purchased Defendant's

18   pre-closing communications with his attorneys, but rather whether Defendant waived his

19   privilege to preclude Plaintiff from reviewing these communications when he continued to store

20   them on the Dell Laptop, which indisputably became Plaintiff's property as part of the Sale, (*see*

21   Dkt. No. 77 at 10), *even after* the Sale. To that end, there is no functional difference between

22   continuing to store pre-closing personal attorney-client communications on a post-Sale company

23   laptop (as Defendant did here), and using a company laptop to access and store pre-closing

24   attorney-client e-mails from a personal, web-based e-mail account, which the *Aventa* court

25

26   [9] Schedule 1.2 states that "[a]ll communications and correspondence to and from counsel for
     Seller" are "Excluded Assets" for purpose of the Sale. (*See* Dkt. No. 88-1 at 231.)

deemed a waiver. *See* 830 F. Supp. 2d at 1110. Accordingly, Defendant has waived attorney-client privilege to pre-closing communications stored on the Dell Laptop.

  ***Post-closing Communications.*** Plaintiff argues that the attorney-client privilege never attached to Defendant's post-closing communications conducted on the Dell Laptop because Defendant lost any reasonable expectation that such communications would be confidential when he acknowledged PCF's technology policy. (*See* Dkt. No. 77 at 37.) Defendants counter that Mr. Fritts did, in fact, maintain a reasonable expectation of confidentiality over such communications because PCF did not regularly enforce the policy.[10] (*See* Dkt. No. 87 at 25.) However, Defendants cite only to persuasive authority. (*See* Dkt. No. 87 at 25) (citing *Curto v. Medical World Communications, Inc.,* 2006 WL 1318387, slip op. at 8 (E.D.N.Y)). And even then, that authority merely stands for the contention that, when employing the *Asia Global* four-factor test, the enforcement of a policy, or lack thereof, is not a dispositive factor. *See id.*

  The fact remains—Mr. Fritts signed an acknowledgement stating: "all Company computers . . . and equipment are intended for business use" (the "Company" being PCF); "[a]ll files and records stored on Company computers are the property of the Company"; and he "should not assume that such messages are confidential." (Dkt. No. 78 at 89.) This is dispositive. *See Aventa*, 830 F. Supp. 2d at 1108 (former employee did not have a reasonable expectation of confidentiality with materials created or received on company laptop post-closing because "[t]he laptop itself was not his property, and the company reserved the right to access and disclose any file or stored communication at any time.")

---

[10] Defendants also argue that the Services Agreement allowed Mr. Fritts to continue operating Rice "consistent with past practice," which was to use his Dell Laptop for business and personal use, thereby preserving Mr. Fritts's reasonable expectation of confidentiality. (*See id.* at 24–25). This argument is unavailing. Mr. Fritts was not a party to the Services Agreement, and the Dell Laptop is not within the scope of the provision Defendants quote. (*See* Dkt. No. 95 at 9.)

Accordingly, the Court FINDS that Defendant has (1) waived attorney-client privilege for pre-closing communications stored on the Dell Laptop and (2) never held attorney-client privilege for post-closing communications stored on the Dell Laptop.

### 3. Attorney's Fees

The Court DENIES Plaintiff's requests for attorney fees and costs. As with Defendants' motion to compel (Dkt. No. 74), Plaintiff has not succeeded on its motion in full and Defendants' nondisclosure, response, and objections were substantially justified. *See* Fed. R. Civ. P. 35(a)(5)(A).

## II.  CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. Non-party Ms. Fritts's Motion to Quash (Dkt. No. 72) is GRANTED as described above;

2. Defendants' Motion to Compel (Dkt. No. 74) is GRANTED in part as described above;

3. Plaintiff's Motion to Compel (Dkt. No. 77) is GRANTED in part as described above;

4. Within 30 days of this order, the parties are ORDERED to meet and confer, discuss an amicable means of complying with the Court's directives, supplement their responses in accordance with the Court's directives; and

5. The Court will not impose any sanctions on either party at this time.

DATED this 28th day of August 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE