THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PCF INSURANCE SERVICES OF THE WEST, LLC,

Plaintiff,

v.

JAMES FRITTS, *et al.*,

Defendants.

---

JAMES FRITTS, *et al.*,

Counterclaim Plaintiffs,

v.

PCF INSURANCE SERVICES OF THE WEST, LLC, *et al.*,

Counterclaim Defendants.

CASE NO. C23-1468-JCC

ORDER

This matter comes before the Court on the motion for judgment on the pleadings (Dkt. No. 123) jointly filed by Plaintiff PCF Insurance Services of the West, LLC ("PCF") and Counterclaim Defendant PCF Holdco (together, "Counterclaim Defendants"). Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary and

hereby GRANTS the motion.

## I. BACKGROUND

This case arises out of a dispute between PCF and Defendants James Fritts, the former leader of RI Insurance Services, LLC ("RI Insurance"), as well as RI Insurance itself. (*See* Dkt. No. 57 at 1.) PCF brings claims of fraud, breach of contract, conversion, and unjust enrichment against Mr. Fritts and RI Insurance. (*See generally id.*) At a high level, PCF alleges that Mr. Fritts and RI Insurance—as a PCF employee and asset, respectively—abused and manipulated PCF's bonus structure to Mr. Fritts' benefit and, in doing so, defrauded PCF of millions of dollars. (*Id.* at 2.) The Court has previously stated the allegations relevant to PCF's claims, (*see* Dkt. Nos. 56 at 1–2, 103 at 1–3), and will not do so again here.

Mr. Fritts and RI Insurance deny PCF's allegations. (*See* Dkt. No. 119 at 19–22.) They also respond with 11 counterclaims. (*See generally id.* at 32–79.) Chicken Dinner, Inc. ("Chicken Dinner")—an S-corporation wholly owned and controlled by Mr. Fritts—join Mr. Fritts and RI Insurance in these counterclaims (together, "Counterclaim Plaintiffs"). (*Id.* at 32.) Counterclaim Plaintiffs have also added PCF's parent entity, PCF Holdco, LLC ("Holdco"), as a Counterclaim Defendant.[1] (*Id.*) The factual allegations relevant to the counterclaims at issue are as follows.

In July 2021, PCF acquired substantially all of RI Insurance's assets and retained Mr. Fritts to continue running it as a discrete business unit of PCF. (Dkt. Nos. 57 at 2, 119 at 2.) PCF, Mr. Fritts, and RI Insurance executed this acquisition via an Asset Purchase Agreement ("APA"). (Dkt. Nos. 119 at 40, 122 at 13; *see also* Dkt. No. 119-1) (APA). Also as part of the acquisition, Holdco sold $85 million worth of its Class A Tracking Units to Chicken Dinner under a Unit Purchase Agreement ("UPA") (hereinafter the "Tracking Unit Transaction").[2] (Dkt.

---

[1] The Court understands that there are two other Counterclaim Defendants: Jenni Lee Crocker and Jeff Hutchins. (*Id.* at 33.) However, PCF and Holdco assert that Ms. Crocker and Mr. Hutchins are unrelated to the instant motion, (*see* Dkt. No. 123 at 7), and Counterclaim Plaintiffs do not dispute this assertion, (*see generally* Dkt. No. 123). Therefore, the Court does not treat them as Counterclaim Defendants for purposes of the instant motion.

[2] A Tracking Unit is defined as "a unit representing an interest" in Holdco. (Dkt. No. 119-6 at 6.)

Nos. 119 at 62, 122 at 47; *see also* Dkt. No. 119-4) (UPA). The Tracking Units were issued by Holdco's parent company, non-party PCF Management Equity ("PCF ME").[3] (Dkt. No. 119-4 at 2.) In signing the UPA, Chicken Dinner represented that it "ha[d] been furnished, ha[d] carefully read, and ha[d] relied solely . . . on the information contained in [the UPA] and [PCF ME's] LLC Agreement." (Dkt. No. 119-4 at 4.) And Mr. Fritts, as a representative of Chicken Dinner, agreed "to all of the terms and conditions of the Limited Liability Company Agreement of [PCF ME], . . . , as a Member of the Company owning Tracking Units of Company." (*Id.* at 10.)

Most relevant to the dispute at bar, PCF ME's LLC Agreement states that:

> By becoming a member hereunder and signing or joining to this Agreement, **each Member hereby adopts and ratifies his or her obligations and agreements under (i) the PCF Holdco LLC Agreement**, all of which obligations and agreements are incorporated herein by reference . . . **as if such Member were a direct party to such agreement** . . . Each Member acknowledges and agrees that the Company shall be a member of PCF Holdco and shall also be bound by the obligations and agreements applicable to it under the PCF Holdco LLC Agreement. **Each Member acknowledges that any provisions applicable to the Class A Units pursuant to . . . the PCF Holdco LLC Agreement** (including any repurchase provisions set forth therein) **shall apply *mutatis mutandis* to the Tracking Units held by such Member.**

(Dkt. No. 119-6 at 6) (emphasis added). In other words, any Member owning Class A Tracking Units, *i.e.*, a "Unitholder," thereby agrees to abide by the provisions of Holdco's LLC Agreement. That Agreement, in turn, contains the following forum-selection clause:

> **Each Unitholder irrevocably submits to the exclusive jurisdiction of the Court of Chancery of the State of Delaware** . . . for the purposes of any suit, action or other proceeding arising out of or relating to this Agreement or any transaction contemplated hereby.

(Dkt. No. 119-5 at 105) (emphasis added).

In September 2023, PCF terminated Mr. Fritts for cause and initiated the instant action.

[3] PCF ME holds equity issued by Holdco for the benefit of Mr. Fritts and other employees of PCF. (Dkt. Nos. 119 at 32, 122 at 3.)

(*See generally* Dkt. No. 57.) Then, in February 2024, Holdco amended its LLC Agreement to include a provision that would penalize any Unitholders who caused "material economic and reputational harm to the Company." (Dkt. No. 119-5 at 36) (§ 3.11(c)). Specifically, any Unitholder who "defrauded, tortiously injured, converted property of, was unjustly enriched at the expense of," or otherwise harmed Holdco would immediately "forfeit" all their Tracking Units for no consideration. (*Id.*) But this provision only applied to any "Unitholder who is or was an employee or contractor of the Company or any of its Subsidiaries." (*Id.*) The parties deem this amendment the Forfeiture Provision. (*See* Dkt. Nos. 119 at 61, 122 at 45.)

Counterclaim Plaintiffs challenge the viability of the Forfeiture Provision. (*See* Dkt. No. 119 at 65–70) (Counterclaims I through V address the Forfeiture Provision). They argue that Holdco's adoption of the Forfeiture Provision unfairly targets Mr. Fritts and thus rises to the level of breach of contract, breach of implied duty of good faith and fair dealing, and fraud. (*See id.*) In turn, Counterclaim Defendants argue that Counterclaim Plaintiffs should have brought its Forfeiture Provision-related claims in Delaware Chancery Court, as required by the forum-selection clause in Holdco's LLC Agreement. (Dkt. No. 123 at 5–6.) Counterclaim Plaintiffs therefore ask the Court to dismiss Counterclaim IV[4] in its entirety, as well as the portions of Counterclaims I, II, III, and V that relate to the Forfeiture Provision. (Dkt. No. 123 at 6.)

## II. DISCUSSION

### A. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standards for deciding a Rule 12(c) motion are "functionally identical" to those of a Rule 12(b)(6) motion. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citations omitted). Thus, in reviewing a motion to dismiss under Rule 12(c), a court takes all well-pleaded factual

---

[4] Counterclaim IV seeks a declaratory judgment that the Forfeiture Provision is null and void. (Dkt. No. 119 at 69–70.)

allegations as true and draws all reasonable inferences in favor of the non-moving party. *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019). Nevertheless, a court "need not accept as true a legal conclusion presented as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ultimately, "[j]udgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that [they are] entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).[5]

**B. The Forum-Selection Clause in Holdco's LLC Agreement Governs**

As noted, Counterclaim Defendants move for Rule 12(c) judgment on Counterclaims I, II, III, IV, and V, to the extent they relate to the Forfeiture Provision. (*See generally* Dkt. No. 123.) They argue that the Court must dismiss these counterclaims because Counterclaim Plaintiffs improperly brought them in this Court, when they should have brought them in Delaware Chancery Court pursuant to the forum-selection clause in Holdco's LLC Agreement. (*Id.* at 10–15.) Counterclaim Plaintiffs, in turn, argue that the APA's forum-selection clause governs this dispute.[6] (*See* Dkt. No. 124 at 5–6.) Thus, the Court must determine which forum-selection clause applies.

Courts employ federal contract law to interpret the scope of a forum-selection clause,

---

[5] Here, the Court acknowledges that this dispute comes before it on a peculiar procedural posture. Of course, courts routinely dismiss cases for failure to comply with a valid forum-selection clause. *See, e.g.*, *Lee v. Fisher*, 70 F.4th 1129, 1159 (9th Cir. 2023) (affirming district court's dismissal of case on *forum non conveniens* grounds); *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1093 (9th Cir. 2018) (same); *Centro Veterinario y Agricola Limitada v. Aquatic Life Scis., Inc.*, 2023 WL 4052234, slip op. at 6 (W.D. Wash. 2023) (same). But those cases were decided on Rule 12(b)(6) motions, whereas this case comes before the Court on a motion for judgment on the pleadings. Nevertheless, because Rule 12(h) allows a party to raise the defense of failure to state a claim on a Rule 12(c) motion, *see* Fed. R. Civ. P. 12(h)(2)(B), and because Rule 12(c) motions are "functionally identical" to Rule 12(b)(6) motions, *Cafasso,* 637 F.3d at 1054 n.4, the Court may properly consider Counterclaim Defendants' Rule 12(c) motion, as it seeks dismissal for failure to comply with a valid forum-selection clause (which is a ground for failure to state a claim).

[6] According to the APA, Washington state is the forum for resolving disputes "arising out of or in connection with" the APA. (Dkt. No. 119-1 at 34.)

even in diversity actions (such as this one). *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). To do so, courts "look for guidance 'to general principles for interpreting contracts.'" *Id*. (citations omitted). However, this Court need not look too far for guidance because general principles of contract interpretation point us to one simple conclusion: the forum-selection clause in Holdco's LLC Agreement applies to the dispute at bar.

The logic is straightforward. When PCF ME, Holdco, Chicken Dinner, and Mr. Fritts executed the Tracking Unit Transaction, Chicken Dinner and Mr. Fritts both represented that they, as members of PCF ME, had carefully read and agreed to the terms of PCF ME's LLC Agreement. (Dkt. No. 119-4 at 4, 10.) And PCF ME's LLC Agreement binds its members to the obligations contained in Holdco's LLC Agreement. (Dkt. No. 119-6 at 6.) In turn, Holdco's LLC Agreement contains a forum-selection clause that submits "any suit, action or other proceeding arising out of or relating to this Agreement or any transaction contemplated hereby" to the exclusive jurisdiction of the Delaware Chancery Court. (Dkt. No. 119-5 at 105.) The phrase "arising out of or related to" applies to "any dispute that has some logical or causal connection to the parties' agreement." *Yei A. Sun*, 901 F.3d at 1086. The Forfeiture Provision appears in Holdco's LLC Agreement. It follows, then, that any challenge to Holdco's adoption of the Forfeiture Provision—as is the case here—is logically and causally connected to Holdco's LLC Agreement. Counterclaim Plaintiffs' Forfeiture Provision-related claims therefore arise out of and relate to Holdco's LLC Agreement, and thus the forum-selection clause in that Agreement covers the contested counterclaims.

Counterclaim Plaintiffs cannot escape this conclusion, though not for a lack of trying. They argue that Holdco's adoption of the Forfeiture Provision constitutes a breach of the APA because it deprives them of bargained-for consideration in bad faith. (Dkt. No. 124 at 11.) They further maintain that Mr. Fritts did not agree to Holdco's LLC Agreement. (*Id*. at 10.) But Counterclaim Plaintiffs' own exhibits belie their assertions. Again, Mr. Fritts, as a Chicken Dinner representative and PCF ME member, carefully read and agreed to the terms of PCF ME's

LLC Agreement. (*See* Dkt. No. 119-4 at 10.) That agreement binds its members to Holdco's LLC Agreement. (Dkt. No. 119-6 at 6.) Mr. Fritts therefore has, in fact, agreed to Holdco's LLC Agreement. Even more tellingly, none of the parties involved in or implicated by the Forfeiture Provision are a party to the APA. As Counterclaim Defendants note, it is Holdco who would compel Chicken Dinner's forfeiture of its Tracking Units if the Forfeiture Provision were enforced. But neither Chicken Dinner nor Holdco are parties to the APA. (*See* Dkt. No. 119-1 at 2) (neither Chicken Dinner nor Holdco are listed as parties). It cannot be, then, that Holdco's adoption of the Forfeiture Provision, which implicates only Chicken Dinner's Tracking Units, constitutes breach of the APA—that is, breach of a contract to which none of the aforementioned entities are even a party. As such, the forum-selection clause in Holdco's LLC Agreement clearly applies here.

**C. Enforcement of the Forum-Selection Clause in Holdco's LLC Agreement**

Normally, the Court would enforce a forum-selection clause through 18 U.S.C. § 1404(a) and its progeny. *See* 18 U.S.C. § 1404(a). That provision, however, merely allows federal district courts to transfer civil actions to another federal district court or division. *See id*. It does not speak to the appropriate mechanism for enforcement of a forum-selection clause that points to a *non*federal forum.

Instead, the appropriate way to enforce a forum-selection clause pointing to a nonfederal forum is through the doctrine of *forum non conveniens*. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Ordinarily when conducting the *forum non conveniens* inquiry, a district court would evaluate both private interests and public interests.[7]

[7] Private interests include the "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id*. at 64 n. 6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). Public interests include "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id*. (quoting *Piper*, 454 U.S. at 241).

*See id*. at 62. However, the calculus shifts when accounting for the existence of a valid forum-selection clause. *Id*. at 63. Indeed, the party opposing the clause bears the burden of establishing that their chosen forum is the proper one. *See id*. Moreover, because parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses" when they agree to such a clause, the parties effectively waive their private interest arguments, and a court should not consider them. *Id*. at 64. As such, a court may only consider arguments about public interest factors, and such factors rarely weigh in favor of defying a forum-selection clause. *See id*. The result is that forum-selection clauses should control except in "extraordinary circumstances unrelated to the convenience of the parties." *Id*. at 62.

Counterclaim Plaintiffs have not met their burden of showing that "extraordinary circumstances" render this Court the appropriate forum. The Ninth Circuit typically considers the following scenarios to be so "extraordinary" as to warrant circumvention of a forum-selection clause: "(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Yei A. Sun*, 901 F.3d at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)). None of the aforementioned scenarios apply here. In fact, Counterclaim Plaintiffs' *forum non conveniens* arguments are bare bones at best. Their primary argument is that the private interest factors weigh heavily in favor of Washington, (Dkt. No. 124 at 15), but the Court cannot consider private interest arguments where the parties have agreed to a valid forum-selection clause. *See Atl. Marine Const.*, 571 U.S. at 63. As for public interest factors, they argue that "[d]ividing litigation between Washington and Delaware would create inefficiencies and undermine judicial economy," thus "burden[ing] judicial resources, delay[ing] resolution, and frustrat[ing] fairness." (Dkt. No. 124 at 15.) Even if true, these burdens alone do not rise to the level of "extraordinary." *See Yei A. Sun*, 901 F.3d at 1088. And Counterclaim

Plaintiffs put forth no other reasons why the Court should not dismiss the relevant counterclaims.

## III. CONCLUSION

For the foregoing reasons, Counterclaim Defendants' motion for judgment on the pleadings (Dkt. No. 123) is GRANTED. The Court DISMISSES without prejudice Counterclaim IV and those portions of Counterclaims I, II, III, and V that pertain to the Forfeiture Provision. Counterclaim Plaintiffs shall file a second amended answer and counterclaims consistent with this order within 14 days of its entry.

DATED this 11th day of February 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE